[Nos. 28249, 28250.   *En Banc.*   March 3, 1941.]

FRED SMITH, *as Assessor of Pierce County, Appellant,* v.
NORTHERN PACIFIC RAILWAY COMPANY *et al.,*
*Respondents.*

THE STATE OF WASHINGTON, *on the Relation of Pierce
County, Appellant,* v. THE STATE TAX COMMISSION
*et al., Respondents.*[1]

*Thor C. Tollefson* and *G. E. Peterson,* for appellants.

*Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa,* for respondent Northern Pacific Railway Company.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondent State Tax Commission.

STEINERT, J.—Two actions were brought in the superior court to determine whether certain personal property owned and held by defendant railroad company should be assessed as "operating property" or as "non-operating property," as those two descriptive terms are defined by chapter 123, Laws of 1935, p. 356 (Rem. Rev. Stat. (Sup.), § 11156-1 [P. C. § 7088-31] *et seq.*), which provides a method for the assessment and taxation of property of transportation and other utility companies. One of the actions was brought by the assessor of Pierce county against the Northern Pacific Railway Company and the members of the state tax commission, and sought a declaratory judgment relative to the assessable character of certain personal property for the year 1940. That action was instituted prior to the entry of any order by the tax commission relative to the assessment of respondent's railroad property for that year. The other action, brought by the state of Washington, on the relation of Pierce county, against the same defendants, was instituted *after* the tax commission had entered an order directing that the property in question be assessed for the year 1940 as "operating property." In that action, plaintiff sought a writ of certiorari

to review the tax commission's order. The two causes were consolidated for trial, and, upon a trial by the court, a decree was entered in each cause adjudging the property to be assessable as "operating property." From each decree, the respective plaintiff has appealed.

The facts are not in dispute. Respondent Northern Pacific Railway Company owns an interstate railroad extending from Lake Superior, in Wisconsin, through a number of states, including Washington, to Puget Sound and to Portland, Oregon. Its main or branch lines extend through, or into, twenty-three counties, including Pierce county, in Washington. In the latter county, the company maintains repair shops and an assembling plant.

At twelve o'clock noon on January 1, 1940, respondent owned personal property of the cash market value of many thousands of dollars, and consisting of materials, supplies, shop machinery, tools, and equipment then physically located in Pierce county, and which it had theretofore purchased or otherwise acquired for use in the operation, maintenance, and repair of its railroad in the state of Washington. On that date, none of the property had actually been installed as part of the company's railroad, but all of that property, being then set apart, was held by the company in storage, exclusively in anticipation, and with the intention, of subsequently installing it as a part of its railroad, or of utilizing it in the maintenance and operation thereof. The same conditions of ownership had existed, and the same practice had been followed, in preceding years, and they will, unless otherwise interrupted, continue to exist and be followed in the future. In accordance with rules and regulations prescribed by the interstate commerce commission, all of the property, since its purchase, has been carried on the company's books of account as "materials and supplies," and the purchase

price thereof has been paid, and in the future will similarly be paid, from the company's working capital.

The cash market value of the property on January 1, 1940, greatly exceeded Pierce county's relative track mileage proportion of the cash market value of the total amount of personal "operating" property then owned and held by the railway company in the state of Washington.

On June 26, 1940, pursuant to the requirements of chapter 123, Laws of 1935, p. 363, § 7, as amended by chapter 206, Laws of 1939, p. 742, § 19 (Rem. Rev. Stat. (Sup.), § 11156-7 [P. C. § 7088-37]), the tax commission assessed the true cash value of the "operating property" of all the companies mentioned in that act, including respondent railway company, as of twelve o'clock noon of January 1, 1940, and entered such assessments in an assessment roll, notice of which was mailed to the companies, all as required by the statute. At the time of making such assessments, the tax commission, pursuant to the authority vested in it by chapter 123, Laws of 1935, p. 361, § 2, Rem. Rev. Stat. (Sup.), § 11156-2 [P. C. § 7088-32], determined that all of the property above referred to was part of the "operating property" of respondent railway company, and was assessable under that classification. Appellants have contended, and now contend, that all of the property here involved constituted "non-operating property" within the meaning of the statute, and upon that theory brought, and have appealed, these two actions.

The term "operating property" is defined by § 1, subd. 17, of the 1935 act, p. 360, Rem. Rev. Stat. (Sup.), § 11156-1 [P. C. § 7088-31] (17), as follows:

"The term 'operating property' shall mean and include all property, real and personal, owned by any company, or held by it as occupant, lessee or otherwise, including . . . *devices, appliances, instruments, equipment, machinery,* . . . and all other property

of a like or different kind, situate within the State of Washington, *used by the company in the conduct of its operations;* . . . " (Italics ours.)

The term "non-operating property" is defined by § 1, subd. 18, of the act, p. 360, Rem. Rev. Stat. (Sup.), § 11156-1 [P. C. § 7088-31] (18), as follows:

"The term 'non-operating property' shall mean all physical property owned by any company, *other than that used during the preceding calendar year in the conduct of its operations.* . . . " (Italics ours.)

Section 2 of the act, p. 361 (Rem. Rev. Stat. (Sup.), § 11156-2), provides:

"In all matters relating to assessment and taxation the commission shall have jurisdiction to determine what is operating property and what is non-operating property."

Other sections of the 1935 act, as amended by the 1939 act, prescribe the procedure for the assessment and taxation of both "operating property" and "non-operating property" owned by companies of the types enumerated in the act.

Section 7 (Rem. Rev. Stat. (Sup.), § 11156-7) provides that the tax commission shall, beginning with the year 1936, and annually thereafter, make an assessment of the operating property of all such companies, and, between the fifteenth day of March and the first day of July of each year, shall prepare an assessment roll upon which it shall enter and assess the true cash value of all the operating property of the companies as of the first day of January of the year in which the assessment is made.

Section 15 of the act, p. 368 (Rem. Rev. Stat. (Sup.), § 11156-15 [P. C. § 7088-45]), provides that the actual cash value of the operating property, as fixed and determined by the state board of equalization, shall be apportioned by the tax commission to the respective

counties, and to the taxing districts thereof wherein such property is located, in the following manner:

"(a) Property of steam, interurban and logging railroad companies, . . . upon the basis of that proportion of the value of the total operating property within the state which the mileage of track, as classified by the commission . . . within such county or taxing district bears to the total mileage thereof within the state, at the end of the calendar year last past. For the purpose of such apportionment the commission may classify railroad track."

Section 16 of the act, p. 370 (Rem. Rev. Stat. (Sup.), § 11156-16 [P. C. § 7088-46]), provides that, when the state board of equalization shall have determined the equalized assessed value of the operating property of each company in each of the respective counties and in the taxing districts thereof, the tax commission shall certify such equalized assessed value to the county assessor of the proper county, and that the county assessor shall enter the real operating property upon the real property tax rolls and the personal operating property upon the personal property tax rolls of his county, together with the values so apportioned, and that the same shall constitute the assessed valuation of the operating property of the company in such county and for the taxing districts therein for that year, upon which valuation taxes shall be levied and collected in the same manner as on the general property of such county.

There is no question but that the procedure prescribed by §§ 7, 15, and 16 of the amended act was followed by the tax commission in the instant case.

Relating to the assessment of "non-operating property," § 17 of the 1935 act, p. 370 (Rem. Rev. Stat. (Sup.), § 11156-17 [P. C. § 7088-47]), provides:

"All property of any company *not assessed as operating property under the provisions of this act* shall be

assessed by the *assessor* of the county wherein the same may be located or situate the same as the general property of the county." (Italics ours.)

The tax commission, it will be recalled, determined that none of the property here involved came within the classification of "non-operating property."

■ The sole question presented by these appeals is whether the property owned and held by respondent railway company under the circumstances already related constitutes "operating property," within the meaning of the 1935 act, and as such is to be assessed by the tax commission, or whether, on the contrary, it constitutes "non-operating property," assessable locally by the county assessor of Pierce county. The dispute between the parties arises over the interpretation to be given to the words "all property . . . *used* by the company in the conduct of its operations," which class of property is defined by § 1 (17) of the 1935 act as "operating property," and the words "all physical property . . . other than that *used during the preceding calendar year,*" which latter class of property is defined by § 1 (18) of the 1935 act as "non-operating property." The question is thus further narrowed to the meaning of the word "used" as employed in these two sections of the statute.

Appellants contend that the word "used," as employed in the definitions of "operating property" and "non-operating property," is to be construed as meaning such property only as was *actually* used by the railway company during the preceding calendar year, regardless of the time, method, or purpose of its acquisition, or of the manner in which it was held. That interpretation would exclude, as a part of the operating property of the railway company, all fuel, material, supplies, tools, equipment, or machinery, and other like property, not actually used during the preceding cal-

endar year, no matter how available or necessary they might be for the continued operation and conduct of its railroad. We are not impressed with, nor are we inclined to accept, so narrow a construction of the statutory language.

Much of the property involved in these actions will be consumed in, and all of it is required for, the proper operation of the railroad. If provision were not made for its acquisition and storage, to be had on hand when occasion demanded, the company could not operate successfully, nor could the company discharge the duties imposed upon it by the provisions of the public service commission law (Rem. Rev. Stat., §§ 10345-10347 [P. C. §§ 5536-5538]) and the interstate commerce act (49 U. S. C. A., § 1, subds. 4, 11) relating to safe, adequate, and efficient service by common carriers.

The word "used," like many others in the English language, has various significations, dependent upon the subject matter to which it relates, the idea sought to be conveyed, and the explanatory or qualifying language which accompanies it. Its exact meaning can be gained only from the context of the sentence or the paragraph in which it is included. In *State v. Gastonguay,* 118 Me. 31, 105 Atl. 402, it is said:

"The verb 'use' or 'used' has two meanings recognized by all lexicographers and unconsciously differentiated in common speech. 1—To employ or be employed or occupied. In this sense the word would include a single isolated instance of use. 2—To practice customarily or (in the case of a place or thing) to be the subject of customary practice, employment or occupation."

With respect to the statute now under consideration, the word "used" may be considered (1) as a past participle, having reference to an actual use made of a specific thing, or things, in the past; and (2) as an adjective, having reference to the present nature or char-

acter of a thing as determined by the customary, frequentative use of similar things. The first of these two meanings denotes *action taken* with reference to a thing, while the second is merely *descriptive* of the nature or character of the thing.

When the legislative act is read as a whole, it is reasonably clear that the word "used" was employed in its adjective, or descriptive, sense rather than in its past participial sense.

What the legislature evidently intended by the wording of the statute, and the interpretation which we unhesitatingly place upon the language now under consideration, is that, for the purposes of assessment and taxation, property which is held and made available by a railroad company for a customary railroad use, and which is reasonably necessary for the efficient operation of the railroad, is to be considered "operating property," and that property not so held, made available, and necessary is to be considered "non-operating property."

The precise question now before us has never been decided by this court, and there are but few cases from other jurisdictions which touch upon it. However, such authorities as have been called to our attention, or which we have been able to find upon independent search, either directly support our view or else are not inconsistent with it.

In *Philadelphia & R. R. Co. v. Woodbridge Township,* 91 N. J. L. 180, 102 Atl. 392, there was involved the validity of a tax assessed by the taxing authorities of a township upon certain crossties belonging to a railway company and then being treated in a creosoting plant located in the township and operated by the railway company. The ties were shipped by the company to the plant solely for the purpose of treatment, and when creosoted were to be promptly distributed along the

company's right of way, some of them to be used on that portion of the railroad which was located within the state, and others to be used outside of the state. Under the provisions of the New Jersey law, real and personal property of railroad corporations used for railroad purposes within the state was not taxable by the authorities of the taxing district in which the property was located, but was taxable by the state board of taxes and assessments. The township authorities, however, assessed the tax upon the whole mass of ties, without regard to their intended use upon the roadbed in other parts of the state. Holding that so much of the property as was intended for use within the state was not subject to local taxation, and that the act of the township officers in attempting to impose such tax was in violation of the right of the state to tax the property for state uses, the court of errors and appeals of New Jersey said:

"That the ties in question were not *actually* in use for railroad purposes on the taxing date is apparent from what has already been stated. The primary question, therefore, is what is the scope to be given to the words 'used for railroad purposes' as this phrase appears in section 1 of the Railroad Tax act? That question, however, is no longer an open one. Since the decision by this court in 1892 of the case of *United New Jersey Railroad and Canal Co. v. Jersey City*, 55 N. J. L. 129, it has been consistently held, whenever the matter has come up for judicial consideration, that property owned by a railroad corporation, which has been acquired and is held for a railroad use to which it is intended to be subjected in the near future, is property used for railroad purposes within the meaning of the Railroad Tax law, although such use has not actually been begun; and, therefore, is taxable under that act, and not under the General Tax law of the state."

The case cited in the above quotation involved unused portions of a railroad right of way. In holding

that such portions of the right of way were "used for railroad purposes," and thus not subject to local taxation, the court used the following language:

"Are we to say that each of those portions is not used for railroad purposes merely because it is not presently and all the time in actual occupation? Such a construction of the statute appears to us to be too literal and narrow." *United New Jersey R. & C. Co. v. Jersey City*, 55 N. J. L. 129, 26 Atl. 135.

As stated in still another case from the same jurisdiction:

"The tests to be applied are whether these lands are now used or devoted to railroad purposes, *or held for fairly anticipated railroad purposes and emergencies*, and the purposes incident thereto.

"If these lands are either used for railroad purposes, or held by the railroad company solely for fairly anticipated railroad purposes, they are then taxable only by the state board of assessors as railroad property, and are not subject to local taxation." (Italics ours.) *New Jersey Junction R. Co. v. Jersey City*, 63 N. J. L. 120, 43 Atl. 577.

In *Chicago, St. P. M. & O. R. Co. v. Douglas County*, 122 Wis. 273, 99 N. W. 1030, the statute in question exempted from local taxation all property *"necessarily used in operating any railroad."* It was held that, under the circumstances there involved, a grain elevator owned by the railroad was exempt from local taxation.

The test in such matters is whether or not the property is reasonably necessary in the ordinary conduct of the company's business. *State v. Northwestern Tel. Exchange Co.*, 96 Minn. 389, 104 N. W. 1086; *State v. Pequot Rural Tel. Co.*, 188 Minn. 520, 247 N. W. 695.

Other cases upon the general subject of taxation of "operating property" of railroads and public utility companies are: *San Diego & A. R. Co. v. State Board,*

165 Cal. 560, 132 Pac. 1044; *San Francisco-Oakland Terminal Rys. v. Johnson,* 210 Cal. 138, 291 Pac. 197; and *Southern California Tel. Co. v. Los Angeles County,* 212 Cal. 121, 298 Pac. 9. While those cases are not squarely in point, they lend support to our conclusion. In the last case cited, for instance, the court, while holding that a building under construction was not exempt from local taxation, expressed itself as follows:

"Nevertheless, it is not apparent to us how, under any construction, the words 'used exclusively in the operation of their business' can possibly include property which is neither used nor available for use in such business. Of course, it cannot be doubted that it is the duty of a utility to plan and prepare for emergency and future needs of its business; and we are disposed to give a broad interpretation to the constitutional provision. No one would seriously doubt that extra equipment for replacement purposes or for emergency use is property 'used' by the utility, even though on the taxable date it was not in use, and even though at that date it had never been actually placed in use. And the same is true, we think, of necessary additions or betterments when the same are completed. The reason for this is clear enough. It is necessary that this property be on hand when needed, and it is available for use at any time." *Southern California Tel. Co. v. Los Angeles County, supra.*

Under the authority vested in the tax commission by § 2 of the 1935 act (Rem. Rev. Stat. (Sup.), § 11156-2), that body has jurisdiction to determine what is operating property and what is non-operating property. In the absence of fraud, or of arbitrary and capricious action, its determination of such questions is controlling. *Ada County v. Bottolfsen,* 61 Idaho 363, 102 P. (2d) 287. There is nothing in the instant case to warrant a holding that the tax commission, in classifying the property here involved as operating property, acted in excess of its jurisdiction, perpetrated a fraud

upon Pierce county, or proceeded in an arbitrary or capricious manner.

Furthermore, it appears that ever since 1907 the state tax commission, proceeding under successive legislative acts, has followed the same method of classifying and assessing railroad property as that adopted in the instant situation. Many sessions of the legislature have been held during that time, and no change has been made in the law to prevent the continuance of that procedure. On the contrary, the tax commission has, by the 1935 act, been given almost plenary jurisdiction.

■ Where the language of a statute is plain and unequivocal, the courts will, of course, construe it according to its true intent, notwithstanding a contrary construction by administrative officers. *State ex rel. Leach v. Fishback,* 79 Wash. 290, 140 Pac. 387; *Wendt v. Industrial Ins. Commission,* 80 Wash. 111, 141 Pac. 311; *State ex rel. Bonsall v. Case,* 172 Wash. 243, 19 P. (2d) 927; *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908; *Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786; *Goodwin v. Northwestern Mutual Life Ins. Co.,* 196 Wash. 391, 83 P. (2d) 231. Statutes may not be amended by administrative construction. *Pacific Tel. & Tel. Co. v. Henneford, supra.*

But where a statute is ambiguous, the construction placed upon it by the department or an officer charged with its administration, while not binding upon the courts, is entitled to considerable weight in determining the intention of the legislature. *Regan v. School District No. 25,* 44 Wash. 523, 87 Pac. 828; *State ex rel. Cowles v. Schively,* 63 Wash. 103, 114 Pac. 901; *Huntworth v. Tanner,* 87 Wash. 670, 152 Pac. 523, Ann Cas. 1917D, 676; *State ex rel. Ball v. Rathbun,* 144 Wash. 56, 256 Pac. 330; *State ex rel. Taylor v. Superior Court,* 2 Wn. (2d) 575, 98 P. (2d) 985.

And "where the legislature has silently acquiesced" in the administrative construction by failing to amend the particular act, "the executive construction is accepted generally by the courts as persuasive." *State ex rel. Ball v. Rathbun, supra; State ex rel. Taylor v. Superior Court, supra.* There is nothing in the language of the 1935 act which suggests to us that it should be interpreted in a manner different from that in which it has been interpreted by the tax commission.

Appellants contend strenuously, and their principal argument is, that the question here presented was determined by our decision in the case of *Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786, involving the compensating tax act of 1935 (chapter 180, Laws of 1935, Title IV, pp. 726-728, §§ 31-35). That act imposed a tax or excise for the privilege of *using* within this state any article of tangible personal property purchased subsequent to April 30, 1935. In the enforcement of the act, the tax commission adopted a regulation which provided, in effect, that the word "use" included the exercise of any right or power over the property preparatory to actual use, such as keeping, storing, withdrawing from storage, moving, installing, or performing any act of dominion or control over such property. Under that regulation, the tax commission sought to impose upon the telephone company a tax measured, in part, by the amount of certain property retained in storage. This court held that the tax was solely upon "use," and not upon keeping, storing, withdrawing from storage, moving, or installing personal property, and that the tax commission had no power, by the adoption of a rule or regulation, to amend the statute or to impose a tax upon property or upon a transaction that was not mentioned in the statute as taxable. Being a tax solely upon actual use of property, the tax was held invalid because it applied to an

instrumentality of interstate commerce. That decision is relied upon by appellants here because of the holding therein that "use" meant actual use, and did not include such incidents as storage, etc. Upon that premise, appellants argue that the word "used" in the statute now under consideration likewise has reference only to property that is actually used, and does not include property which is merely held in storage for future use.

That case is not in point here for the simple reason that there the tax was an *excise* tax levied upon the privilege of *using* property, while here the tax is an *ad valorem* tax imposed, not on the use of property, but on the property itself. In the compensating tax act, the word "use" is employed to denote the activity which is subject to the tax, while in the act now before us the word "used" is employed, as already stated, merely to describe the property to which the tax relates, and to determine what is "operating property" and what is "non-operating property." Under the former act, taxability or exemption from taxability was determined solely by "use". Under the present act, the word "used" does not determine the question of taxability or exemption therefrom, but merely the proper assessment procedure. Under the latter act, all of the property of both classifications is subject to taxation, "operating property" being assessable by the tax commission, and "non-operating property" being assessable by the county assessor. The distinction between the telephone case and these cases is patent, and, consequently, that decision presents no obstacle to the conclusion at which we have arrived upon these appeals.

The decrees are affirmed.

ROBINSON, C. J., MAIN, BEALS, MILLARD, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, J. (concurring in the result)—While I think the decision in *Pacific Tel. & Tel. Co. v. Henneford,* 195

Wash. 553, 81 P. (2d) 786, is apposite authority sustaining appellants' position, I concur in the result. The case cited was partially overruled in *Spokane v. State*, 198 Wash. 682, 89 P. (2d) 826. In the light of the decisions of the supreme court of the United States in the cases of *Southern Pac. Co. v. Gallagher*, 306 U. S. 167, 59 S. Ct. 389, and *Pacific Tel. & Tel. Co. v. Gallagher*, 306 U. S. 182, 59 S. Ct. 396, it should now be ignored, if not completely overruled.

[1] Reported in 110 P. (2d) 845.