## STANOLIND PIPE LINE CO. v. OKLAHOMA TAX COMMISSION.

### No. 6303.

District Court, W. D. Oklahoma.

Oct. 9, 1939.

Clay Tallman, Guy H. Woodward, and Don Campbell, all of Tulsa, Okl., for plaintiff.

Dick Jones, of Oklahoma City, Okl., for defendant.

Cantrell, Savage & McCloud, of Oklahoma City, Okl., amici curiae.

VAUGHT, District Judge.

The plaintiff brings this action against the Oklahoma Tax Commission seeking to recover certain taxes paid under protest, which were collected by the tax commission under what is known as the "Use Tax Act of 1937." 68 Okl.St.Ann. § 1291 et seq. Said act provides:

"Section 4. There is hereby levied and there shall be collected from every person using, within this State, any article of tangible personal property purchased, leased, rented or exchanged subsequent to the date of passage and approval of this Act, an excise tax for the privilege of so using such tangible personal property. Such tax shall be and is hereby levied, and shall be collected in an amount equal to two (2%) per centum of the purchase price (as defined in Section 3 of this Act) of such tangible personal property." 68 Okl. St.Ann. § 1294.

"Section 7. The tax hereby levied shall be collected by the Commission.

"Section 8. Each taxpayer subject to the provisions of this Act shall, on or before the 15th day of every calendar month, file a return with the Commission, on blanks furnished by the Commission, showing in detail the total purchase price of tangible personal property used by him within the State during the preceding calendar month subject to the tax herein imposed and such other information as the Commission may deem pertinent. Each taxpayer shall remit to the Commission, with each such return, the amount of tax shown thereon to be due. Such return shall be made under oath.

"Section 9. If the amount of tax imposed by this Act is not paid on or before the date prescribed for its payment, there shall be collected, as a part of the tax, a

penalty upon said unpaid amount at the rate of one (1%) per centum per month from the date prescribed for its payment until it is paid. In addition to the above prescribed penalty, there shall be collected an additional penalty of ten (10%) per centum on the tax due when such tax is not paid within a period of thirty (30) days after the final date prescribed for its payment." 68 Okl.St.Ann. §§ 1297–1299.

The plaintiff alleges that the taxes so paid amounted to $8,982.25 from May, 1937, to and including March, 1939, for which it seeks judgment together with interest.

The plaintiff alleges in its petition that said taxes so levied are excise taxes for the use of certain tangible personal property in the repair and upkeep of an interstate pipe line and that said taxes either constitute a "use tax" for said purposes or they constitute ad valorem taxes upon the property so used in said repair and upkeep of said interstate pipe line, and contends that if they are levied under the first theory said levy is in violation of and contrary to the Fourteenth Amendment to the Federal Constitution, U.S.C.A., in that it constitutes a taking of plaintiff's property without due process of law and that it also creates and constitutes a burden upon and interference with interstate transactions in violation of and contrary to the commerce clause of the Federal Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3. If said taxes are levied under the second theory, that is upon an ad valorem basis, then said levy is violative of the Constitution of Oklahoma, Okl.St.Ann.Const. art. 10, § 9, which provides: "No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax be levied upon any kind of property in this State to be used for State purposes; * * *."

The defendant has filed its answer, admitting certain allegations of the petition but denying specifically said plaintiff, Stanolind Pipe Line Company, is engaged exclusively in interstate commerce but alleging the fact to be it is engaged in intrastate as well as interstate business.

It admits that the plaintiff, since May 5, 1937, purchased and rented certain equipment and material outside of the state of Oklahoma for removal into and use in the state of Oklahoma, and that such property has already been put to use in said state by said plaintiff, but denies that said property was brought into or used within the state of Oklahoma by the plaintiff for the purpose of carrying on an exclusive interstate business.

The defendant admits that it has collected the taxes as alleged by the plaintiff; that the payment was made by said plaintiff under protest; and that the defendant was notified in writing by the plaintiff of its intention to file a suit for the recovery thereof within thirty days after said payment.

The defendant specifically denies the taxes assessed are ad valorem taxes and therefore in violation of the Constitution of the state of Oklahoma prohibiting the levy of an ad valorem tax for state purposes, but alleges that said taxes are excise taxes levied upon the use of said property in this state upon its arrival and after interstate commerce has ceased and the property has come to rest in said state.

It furthermore denies that the taxes assessed against the plaintiff are in violation of its rights under the commerce clause and the Fourteenth Amendment to the Constitution of the United States.

The parties have stipulated the facts in this case as follows:

"That the plaintiff, Stanolind Pipe Line Company, owns, maintains and operates a pipe line and pipe line system extending from the State of Texas northward through the State of Oklahoma and other states, to the State of Indiana; that it receives deliveries of oil from connections in Oklahoma for delivery to points outside of the State of Oklahoma, and the business of the plaintiff in connection with its pipe line operations is exclusively interstate commerce.

"That the articles of tangible personal property consisting of pipe, machinery, repair parts and other items of tangible personal property for the maintenance and upkeep of its pipe line system were purchased without the State of Oklahoma and imported into the State of Oklahoma to fulfill specific orders for the repair and maintenance of its interstate pipe line system in Oklahoma, and said articles were installed as quickly as possible after the arrival into this State.

"That the Oklahoma Tax Commission in its regulations adopted in connection with the Use Tax Law in controversy in this cause, defines the term 'use' as follows:

" 'The term "Use" as it appears in the Use Tax Act is hereby defined to be and mean:

" 'The employment of an article of tangible personal property for the accomplishment of a purpose; to make use of; to treat; to convert to one's service; to avail oneself of; to employ for the attainment of some purpose or end.' "

There has been no construction placed upon the act in question either by the Supreme Court of Oklahoma or by the Federal Courts.

The plaintiff relies upon the construction placed upon a similar statute by the Supreme Court of the state of Washington, 195 Wash. 553, 81 P.2d 786, which was appealed to the Supreme Court of the United States and on which certiorari was denied, 306 U.S. 637, 59 S.Ct. 483, 83 L.Ed. 1038.

The defendant relies strongly upon certain decisions of the Supreme Court of the United States construing the California statute.

It therefore becomes necessary to analyze the statutes in question and the court decisions construing said statutes. The Oklahoma statute has been stated supra. The Washington statute, under the title Compensating Tax, Laws 1935, pp. 726, 727, provides:

"Sec. 31. There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of 2%.

"Sec. 32. The provisions of this title shall not apply:

"(a) In respect to the use of any article of tangible personal property brought into the State of Washington by a non-resident thereof for his or her use or enjoyment while within the state; * * * ."

"Sec. 33. If any article of tangible personal property has already been subjected to a tax by this or any other state in respect to its sale or use in an amount less than the tax imposed by this title, the provisions of this title shall apply, but at a rate measured by the difference only between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed."

The California statute, St.1935, p. 1297 et seq. provides:

"Section 1. This act is known and may be cited as the 'Use Tax Act of 1935.'

"Sec. 2. The following words, terms and phrases when used in this act have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning.

"(a) 'Storage' means and includes any keeping or retention in this State for any purpose except sale in the regular course of business of tangible personal property purchased from a retailer.

"(b) 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business.

"(c) 'Purchase' means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. A transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price shall be deemed a purchase.

\* \* \*

"(h) 'Tangible personal property' means personal property which may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses."

"Sec. 3. An excise tax is hereby imposed on the storage, use or other consumption in this State of tangible personal property purchased from a retailer on or after July 1, 1935, for storage, use or other consumption in this State at the rate of three per cent of the sales price of such property."

It will be noted that the Oklahoma statute failed to define the term "use." However, the tax commission, in the exercise of its delegated power, defines the term "use" as follows:

"The term 'Use' as it appears in the Use Tax Act is hereby defined to be and mean:

"The employment of an article of tangible personal property for the accomplishment of a purpose; to make use of; to treat; to convert to one's service; to avail oneself of; to employ for the attainment of some purpose or end."

In construing the Washington statute, the Supreme Court of Washington in Pacific Telephone & Telegraph Co. v. Henneford et al., 195 Wash. 553, 81 P.2d 786, in an

opinion dated July 29, 1938, held, quoting from the syllabus:

"The taxation of telephone equipment purchased by telephone company outside the state for use within the state in its intermingled intrastate and interstate telephone business, under statute taxing use of personalty purchased at retail either within or without the state and providing an offset if article has been subjected to an equivalent use or sales tax in any state, would be invalid as imposing an unlawful burden upon interstate commerce. * * *

"The statute taxing use of personalty purchased at retail either within or without state, but providing an offset if article had been subjected to an equivalent use or sales tax in any state, is not valid in so far as it taxes the use of an instrumentality of interstate commerce. * * *

"Under statute taxing use of personalty purchased at retail either within or without state, but providing an offset if article had been subjected to an equivalent use or sales tax in any state, a rule of the tax commission regarding time when tax liability arises and defining the statutory term 'made available for use' was no authority for the imposition and collection of the tax upon the use of an instrumentality of interstate commerce. * * *

"The tax commission had no power to amend compensating tax statute taxing the use of personalty purchased at retail either within or without the state by the promulgation of rules. * * *

" 'Stand-by equipment' which was purchased by telephone company outside of state and which could not be purchased within state, and which was kept available for use from time to time in the company's intermingled interstate and intrastate telephone business, was dedicated to such use from time of purchase and was an inseparable part of interstate commerce and was not taxable under statute taxing use of personalty purchased at retail either within or without the state and providing offset if article had been subjected to an equivalent use or sales tax in any state."

This case was appealed to the Supreme Court of the United States and on February 6, 1939 certiorari was denied. Henneford et al. v. Pacific Telephone & Telegraph Co., 306 U.S. 637, 59 S.Ct. 483, 83 L.Ed. 1038.

It is clear, from observing the Oklahoma statute and the Washington statute, that they are very similar, in fact, almost identical and it is stated in the briefs that the Oklahoma statute was modeled after the Washington statute. The California statute, however, is much broader and gives a distinct meaning to the word "use." The Use Tax Act of 1935 of California in section 2(b) defines "use" as follows: " 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business."

Section 3, which is the material section of the statute, provides: "An excise tax is hereby imposed on the storage, use or other consumption in this State of tangible personal property purchased from a retailer on or after July 1, 1935, for storage, use or other consumption in this State at the rate of three per cent of the sales price of such property."

In Southern Pacific Co. v. Gallagher et al., 306 U.S. 167, 174, 59 S.Ct. 389, 392, 83 L.Ed. 586, the Supreme Court of the United States, in discussing the California statute, said:

"Two lines of authority aid in considering the effect of this tax on commerce. The first makes it quite clear that a state tax upon the privilege of operating in, or upon carrying on, interstate commerce is invalid. States cannot tax interstate telegraph messages, or freight shipments. A license tax on sales by samples burdens one selling only goods from other states. A tax act as applied to the business of interstate communication is unconstitutional. Where a similar levy by other states may be imposed, with consequent multiplicity of exaction on commerce for the same taxable event, local tax of a privilege, measured by total gross receipts from interstate transactions, is considered identical with an exaction on the commerce itself. This rule is applicable to a tax on gross receipts from interstate transportation; an occupation tax measured by gross receipts from radio broadcasting, and a general tax at specified rates upon the gross income of every resident, construed as 'a tax upon gross receipts from commerce' 'without apportionment.' The measurement of a tax by gross receipts where it cannot result in a multiplication of the levies is upheld.

"Appellant selects from this line the Helson Case [Helson v. Com. of Kentucky by Board, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683] as determinative of the con-

tention that a tax on use of supplies or equipment is a tax on the commerce. A state tax of three cents per gallon was imposed on all gasoline 'sold at wholesale.' This phrase was defined to include gasoline brought out of the state and used within the state. There was no definition of the word use or used. The taxpayers operated an interstate ferry, purchased gasoline in Ohio and used that portion sought to be taxed in propelling their craft in the territorial waters of Kentucky. The court considered the tax on the consumption of the gas the same as a tax on the operation of the ferry boat and therefore invalid under the rule discussed in the preceding paragraph.

"The second line of authority supports the view that use and storage as defined in the California act are taxable intrastate events, separate and apart from interstate commerce. A recent discussion of the topic sets out the precedents in support of a ruling that a tax upon the production of power by the use of which compressors drove natural gas in interstate commerce is valid. Such production is a taxable event distinct from its consumption in commerce. Particular attention is called by the state to the Wallace Case [Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191]. There the tax was on 'selling or storing or distributing gasoline.' It became due on withdrawal from storage. The tax was held applicable to gasoline, purchased out of the state and stored in the state, when 'all is withdrawn and used * * * as a source of motive power in interstate railway operation' and valid against the objection that 'it is in effect a tax upon the use' in interstate commerce. The invalidity of such a tax arises from a levy on commerce itself or its gross receipts, not upon events prior to the commerce.

   *    *    *    *    *    *

"In the Ozark Case [Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439], Missouri sought to justify a franchise tax on a company engaged in the operation of an interstate pipe line by suggesting the tax was upon certain intrastate events, such as operation of communications, repair and purchase of supplies. The tax was forbidden because on the privilege of doing an exclusively interstate business. The opinion is to be read in the light of the statement by the Court of its interpretation of the facts and legal deductions which control its decision.

The Missouri Act called for a franchise tax of a percentage of the par of its stock, apportioned to its assets in that state. This Court said that 'the tax is one upon the privilege or right to do business,' and as the taxpayer 'is engaged only in interstate commerce' the tax 'constitutionally cannot be imposed.' There was then added this paragraph:

" 'The maintenance of an office, the purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the state, were all exclusively in furtherance of its interstate business, and the property itself, however extensive or of whatever character, was likewise devoted only to that end. They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business. The protection against imposition of burdens upon interstate commerce is practical and substantial and extends to whatever is necessary to the complete enjoyment of the right protected.'

"This Court pointed out that the corporation had a license to engage exclusively in interstate business. The language just quoted shows that this Court interpreted the transactions in Missouri as merely a part of the interstate commerce and the tax on the franchise an interference therewith because a tax directly upon it. '* * * nothing was done in Missouri except in furtherance of transportation.' It was this conclusion of the Court on the factual situation which brought about the Ozark decision. Where there is also intrastate activity, an apportioned state franchise tax on foreign corporations doing an interstate business is upheld. A franchise tax on an exclusively interstate business is a direct burden; proportioned to an intermingled business, it is valid. Since the incidence of the California tax as here interpreted is upon events outside of interstate commerce, the Ozark opinion is not applicable."

In Pacific Telephone & Telegraph Co. v. Gallagher et al., 306 U.S. 182, 186, 59 S.Ct. 396, 83 L.Ed. 595, the court further discusses the California statute. This opinion was written by Mr. Justice Reed, who wrote the opinion in Southern Pacific Co. v. Gallagher et al., supra. The court said:

"The appellant, a California corporation, operates a telephone and telegraph

system in interstate and intrastate commerce. The same plant, facilities and organization are devoted to both interstate and intrastate. business. In the necessary operation, maintenance and repair of its system, the appellant purchases outside California large amounts of equipment, apparatus, materials and supplies which are shipped to it in interstate commerce at various points within the state. The tangible personal property which the appellees threaten to tax is of two general classes: specific order and stand-by equipment. The first consists of central office switchboards, frames, cable racks, large private branch exchange switchboards, large underground cables, switches, central office cable, wire, protectors and other component parts of telephone and telegraph lines, which are purchased on specific order for installation at a particular place in the system. The second comprises goods bought from time to time for holding as stand-by supplies to meet fluctuating demands and emergencies and to make repairs.

"The specific order equipment is shipped to the appellant at the place of use. Its representative receipts for the goods at the dock or breaks the seal of the railroad car, and its employees unload the goods from the dock or car into its trucks. In most instances the trucks are driven directly to the building where the equipment is to be installed; in some, to distributing centers for reloading into other trucks which are driven to the place of installation. Occasionally, private branch exchange switchboards must be held by the appellant until the place of installation is ready. There is no holding in warehouses. The stand-by supplies which constitute a reserve to meet current requirements are replenished by monthly orders. The appellant's trucks pick them up at the dock or railroad depot and carry them to storage places at points on the system suitable for prompt distribution. When needed, the stand-by facilities are taken out of the stores and installed.

"The appellant exercises two rights of ownership in California—retention and installation—after the termination of the interstate shipment and before the use or consumption on its mixed interstate and intrastate telephone system. We see no material distinction between the contentions of the appellant and those disposed of in Southern Pacific Co. v. Gallagher [306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586]."

It will be observed that in this discussion, the learned court distinguishes between retention and installation. In other words, there is a moment after the goods have been shipped into the state before they are installed.

The California statute defines "use" as the "exercise of any right or power over tangible personal property incident to the ownership of that property." Under the regulations of the Oklahoma Tax Commission, the word "use" is defined as "the employment of an article of tangible personal property for the accomplishment of a purpose; to make use of; to treat; to convert to one's service; to avail oneself of; to employ for the attainment of some purpose or end."

It is admitted in the stipulation "that the articles of tangible personal property consisting of pipe, machinery, repair parts and other items of tangible personal property for the maintenance and upkeep of its pipe line system were purchased without the State of Oklahoma and imported into the State of Oklahoma to fulfill specific orders for the repair and maintenance of its interstate pipe line system in Oklahoma, and said articles were installed as quickly as possible after the arrival into this State." The definition, as adopted into the regulations of the Oklahoma Tax Commission, specifically limits the word "use" to the employment or installation of the property for some specific purpose and in the stipulation it is admitted that these articles of tangible personal property were brought into the state and installed into the equipment of the pipe line, immediately.

Clearly, under all of the decisions above quoted, the only "use" shown in the case at Bar is the use in the interstate pipe line equipment, and the tax commission, in its regulations defining the word "use", makes no contention that the word "use" shall have the broad meaning as contained in the California statute—"the exercise of any right or power over tangible personal property incident to the ownership of that property."

If the only "use" complained of is the bringing into the state and installing into the interstate pipe line system the tangible personal property, the basis of the taxation involved in this suit, then clearly this is a use in interstate commerce and is not subject to state taxes.

The Oklahoma Act of 1937 was repealed in 1939 and a new law was enacted which

provided as follows: "An excise tax is hereby imposed on the storage, use or other consumption in this State of tangible personal property purchased on or after June 1, 1939, for storage, use or other consumption in this State at the rate of two (2%) per cent of the purchase price of such property. Such tax is hereby levied and shall be collected in an amount equal to two (2%) per cent of the purchase price, as defined in Section 1 above, of such tangible personal property." 68 Okl.St. Ann. § 1309a. And with the respect to the term "use", the act provides: "The term 'use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business." 68 Okl.St.Ann. § 1309(h).

The new Act of 1939 was passed after the Supreme Court of the United States had rendered its opinion in Southern Pacific Co. v. Gallagher et al., supra.

It is the contention of the plaintiff that by the repeal of the 1937 Act and the enactment of the 1939 Act, the Legislature of Oklahoma recognized the distinction between the taxing power under the Washington statute (which was practically the same as the 1937 Oklahoma statute), and the California statute, (which is practically the same as the Oklahoma 1939 Act).

This court would not attempt to say what prompts or suggests an act of the Oklahoma Legislature. The Legislature may have been influenced by the fact that the Washington statute had been held not to reach tangible personal property in the nature of repairs and equipment used solely in interstate commerce and that the California statute did reach such property by virtue of the legislative definition and interpretation of the term "use."

In United States v. Bashaw, 8 Cir., 50 F. 749, 754, the court said: "The very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act."

In re Segregation of School District, No. 58, 34 Idaho 222, 200 P. 138, 139, the court said: "Where changes have been introduced by amendment, it is not to be assumed that they were without design;

usually an intent to change the law is inferred."

In United States v. A. J. Woodruff & Co., 2 Cir., 175 F. 776, 777, the court said: "Where, as in this case, the statute repeals or replaces an earlier law, any change of language is more consistent with a change of intent than with the purpose of defining or declaring the meaning of the language of the earlier repealed statute."

And in passing upon the intent of a legislative body in amending a law, the District Court for the Northern District of Texas, In re Lloyds of Texas, 43 F.2d 383, 384, said: "We must assume that congress had knowledge of those decisions. If they had been satisfactory to that legislative body there would have been no reason to enlarge the definition of 'corporation,' as contained in the very beginning of the statute. That they wished to exempt from bankruptcy the organizations and companies that had been liable to bankruptcy under the old definition of 'corporation' seems evident."

It is, therefore, apparent to this court that the Legislature of Oklahoma was impressed with the holding of the Washington Court and believed that the 1937 statute (Oklahoma) was not sufficiently broad to tax the property or the use of property involved in this case, and that after the decision by the United States Supreme Court, herein referred to, the Legislature sought to enact a new law (practically a duplicate of the California statute) which would reach the use of said property as involved in this case.

The court is clearly of the opinion that, since the tax commission of Oklahoma by its definition limited the word "use" to installation or repair in equipment used wholly in intrastate commerce, it is bound by that limitation, and under the Washington case, that use is clearly a use solely in interstate commerce and the commission is not now permitted to extend that definition or interpretation to include "the exercise of any right or power over tangible personal property incident to the ownership of that property," as is included in the 1939 Oklahoma Act, 68 Okl.St.Ann. § 1309 (h).

It is admitted, under the stipulation, that the plaintiff is engaged only in interstate commerce and that the tangible personal property, the use of which is sought to be taxed in this case, was used solely for

the repair and equipment of property used only in interstate commerce.

The very fact the 1937 Act was repealed and the 1939 law enacted is a strong and persuasive indication that the legislative body put the same construction upon the two acts as herein suggested by this court.

The court deems it unnecessary to review the great mass of authorities cited in the briefs because they may all be condensed into the recent opinions that have been cited in this opinion.

It is unnecessary to pass upon the constitutionality of the 1937 Act in question since it is apparent that the assessment complained of is void, not because of an unconstitutional statute, but because of the misapplication of the act.

The plaintiff is entitled to judgment as prayed for. Findings of fact, conclusions of law and a form of judgment may be submitted consistent with this opinion. An exception is allowed the defendant.