**OKLAHOMA TAX COMMISSION et al. v.
STANOLIND PIPE LINE CO.**

No. 2029.

Circuit Court of Appeals, Tenth Circuit.
July 15, 1940.

F. M. Dudley, of Oklahoma City, Okl.
(A. L. Herr, of Chickasha, Okl., and C. D.
Stinchecum, of Oklahoma City, Okl., on
the brief), for appellants.

Guy H. Woodward, of Tulsa, Okl. (Donald Campbell, of Tulsa, Okl., and John
Cantrell, of Oklahoma City, Okl., on the
brief), for appellee.

Before PHILLIPS, BRATTON, and
HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Section 4, Article 11, Chapter 66, Laws
of Oklahoma 1937, 68 Okl.St.Ann. § 1294,
levied an excise tax at the rate of two per
cent of the purchase price, as elsewhere defined in the act, upon any article of tangible personal property purchased, leased,
rented, or exchanged, for the privilege of
using such property; section 5, 68 Okl.St.
Ann. § 1295, exempted certain classes of
property from the tax; and section 6, 68
Okl.St.Ann. § 1296, provided that if any
property had already been subjected to a
use or sale tax, by that or any other state,
in an amount less than the tax imposed by
the act, the provisions of the act should
apply but the tax should be the difference
between the rate therein fixed and the rate
of the previous tax.

Stanolind Pipe Line Company, a corporation organized under laws of Maine,
hereinafter called the company, owned,
maintained, and operated a pipe line and
pipe line system extending from Texas
northward through Oklahoma and other

states into Indiana. It received deliveries of oil from connections in Oklahoma for transportation to and delivery at points in other states. Its business in connection with its pipe line operations was exclusively interstate. During the time in question, the articles of tangible personal property consisting of pipe, machinery, repair parts and other articles for the maintenance and upkeep of its pipe line system were purchased outside the State of Oklahoma and imported into that state to fulfill specific orders for the repair and maintenance of its interstate pipe line system there, and such articles were installed as quickly as possible after their arrival in the state.

The Oklahoma Tax Commission audited the books of the company, determined that a tax was due for the period from May, 1937, to and including March, 1939, and demanded its payment. The tax was paid under protest, and this suit was filed for its recovery. The company prevailed, 30 F. Supp. 131, and the commission appealed.

■ Chapter 66, supra, was a comprehensive tax code. Article 10, 68 Okl.St.Ann. § 1249 et seq., was a sales tax act, and levied a tax of two percent upon gross proceeds. Article 11, 68 Okl.St.Ann. § 1291 et seq., was a use tax act, and was designed to complement the sales tax act. It is transparently clear that the tax laid by section 4 of article 11 was in essence an excise for the privilege of using tangible personal property. Oklahoma Tax Commission v. Sisters of the Sorrowful Mother, Okl.Sup., 97 P.2d 888; Vancouver Oil Co. v. Henneford, 183 Wash. 317, 49 P.2d 14.

■ The company contended with success in the trial court and renews the contention here that the imposition of the tax for the privilege of using within the state the imported property in the repair and maintenance of its pipe line system constituted a direct burden upon an instrumentality of interstate commerce in violation of the commerce clause of the Constitution of the United States. Article 1, § 8, cl. 3. The question is not new. In Helson and Randolph v. Kentucky, 279 U. S. 245, 49 S.Ct. 279, 73 L.Ed. 683, a ferry boat operated in interstate commerce in Kentucky and Ohio. Gasoline was purchased and placed in the tanks in Ohio for use in operating the boat in both states. A statute of Kentucky taxing the use of gasoline was asserted in respect of the gasoline consumed while the boat was within that state. The court held the tax invalid as a direct burden on the privilege of carrying on interstate commerce. Likewise in Bingaman v. Golden Eagle Lines, 297 U.S. 626, 56 S.Ct. 624, 80 L.Ed. 928, it was held that a statute of New Mexico imposing an excise tax on the sale and use of gasoline and motor fuel was invalid as applied to gasoline purchased outside the state, placed in the tanks of busses engaged exclusively in interstate commerce, and consumed in the state. And in Pacific Telephone & Telegraph Co. v. Henneford, 195 Wash. 553, 81 P.2d 786, certiorari denied, 306 U.S. 637, 59 S.Ct. 483, 83 L.Ed. 1038, it was held that a state statute substantially identical in all material respects with the statute now under consideration, was invalid as applied to equipment and supplies purchased in other states and imported into that state and used in the operation, maintenance and repair of a telephone and telegraph system which did both intrastate and interstate business. But in Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586, the railway company handled intrastate, interstate and foreign commerce over its railroad system. It made extra-state purchases of rails, equipment, machinery, tools and office supplies for the operation and maintenance of its road. Some of the purchases were used in the general offices of the company in California; some were material kept in readiness as stand-by supply for replacement and repair of damaged, destroyed or exhausted equipment; and some were to make improvements, replacements or extensions in pursuance of previously determined plans and specifications. For large scale construction or reconstruction, special orders were placed, the materials were fabricated for particular use, shipped to their destination in California, and installed upon arrival. Few, if any, of the purchases were stored for long term needs; storage was merely incidental to protection use. All of the equipment and supplies were dedicated to consumption in the interstate transportation system of the company. The court held that there was a taxable moment after the property had reached the end of its movement in interstate transportation and before the beginning of its use and consumption in the interstate operation of the company; that the retention and exercise of the right of ownership during that moment was sufficient to support the levying of an excise tax on storage and use under a statute of the state; and that the imposition of the tax in such cir-

cumstances did not contravene the commerce clause. And in Pacific Telephone & Telegraph Company v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595, the company was engaged in the operation of a telephone and telegraph system in intrastate and interstate commerce, the same plant, facilities and organization being devoted to both kinds of business. It purchased outside of California large amounts of equipment, apparatus, materials and supplies which were shipped to it in interstate commerce at various places within that state. Some of such property was purchased on specific order for installation at a particular place in the system. It consisted of central office switchboards, frames, cable racks, large private branch exchange switchboards, large underground cables, switches, central office cable, wire, protectors and other component parts of telephone and telegraph lines. And other of such property was stand-by equipment purchased from time to time for holding as stand-by supplies to meet fluctuating demands and emergencies and to make repairs. The property purchased on specific order was shipped to the company at the place of use where its representative receipted for it at the dock or broke the seal on the railroad car, and its employees unloaded such property from the dock or car into its trucks. In most instances it was taken immediately to the building where it was to be installed, in others it was taken to distributing centers for reloading into other trucks and thence taken immediately to the place of installation. In infrequent instances, private branch exchange switchboards were held until the place of installation was ready, but there was no holding of materials in warehouses. Stand-by supplies were taken by truck from the dock or railroad car to storage places at points on the system suitably adapted to prompt distribution, and later taken from storage and installed as needs arose. Expressly following Southern Pacific Co. v. Gallagher, supra, the court held that the exercise of two rights of ownership—retention and installation—after movement in interstate commerce had ceased and before use or consumption in the telephone system had begun, was sufficient to sustain the imposition of the tax. Likewise in this case there was a taxable moment after the personal property imported into the state reached the end of its movement in interstate commerce and before the beginning of its use or consumption in the interstate

pipe line system of the company, and during that moment the company exercised the rights of retention and installation. That was enough in respect to separateness and apartness of such property from interstate commerce to warrant the state in the exercise of the taxing power to lay an excise upon its use within the state. The tax did not constitute such a direct and immediate burden upon interstate commerce as to offend the commerce clause.

The company seeks to distinguish this case from Southern Pacific Co. v. Gallagher, and Pacific Telephone & Telegraph Co. v. Gallagher, supra. The attempted distinction rests upon a supposed substantial difference between the statute and a regulation of Oklahoma and the statute of California. The statute of Oklahoma did not define the term "use" but it empowered the tax commission to adopt rules and regulations, and by regulations the term was defined to mean "The employment of an article of tangible personal property for the accomplishment of a purpose; to make use of; to treat; to convert to one's own service; to avail oneself of; to employ for the attainment of some purpose or end." Section 3 of the statute of California thus defined the term: " 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business." St.Cal. 1935, p. 1297. The statute of California does not give any unusual or extraordinary meaning to the term, and the definition set forth in the regulation of the tax commission in Oklahoma does not substantially proscribe its usual and ordinary meaning. The retention and exercise of the right of installation of the property in question after the termination of its movement in interstate commerce and before the beginning of its use and consumption in the interstate business of the company came well within the statute and the regulation promulgated under it.

■■■ The further contention of the company is that it was not the intention of the legislature in the enactment of the Act of 1937 to tax the privilege of using tangible personal property in the conduct of interstate commerce. Chapter 66, Laws of 1939, is a complete tax code. Article 12 is a use tax act, 68 Okl.St.Ann. § 1309 et seq., and section 7 thereof repealed from and after May 31, 1939, article 11 of the

earlier act but expressly provides that taxes which had accrued under the repealed statute shall be collected under the new act. Section 1(h) provides that "The term 'use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business." Thus the definitive provision of the statute in Oklahoma is identical with that contained in the statute in California. The argument is that the new act demonstrated a legislative intent to make a substantial change in the then existing law; that it recognized a substantial difference between the tax levied by the two statutes; that it recognized the fact that the earlier act was not as comprehensive as the statute in California; and that taking notice of the decisions in Southern Pacific Company v. Gallagher, and Pacific Telephone and Telegraph Co. v. Gallagher, supra, it sought to change the statute to conform to that in California. It is a general rule of construction that by amending a statute the legislature intended to make a substantial change in the pre-existing law. But like others, that rule has its exceptions. It is not every change in phraseology that indicates a desired change in substance and effect. It may be made for the purpose of expressing more clearly and accurately the same intent or to improve diction. Or it may be to meet a new and unanticipated condition brought about by judicial interpretation of the pre-existing law. And while the presumption to effect a change in substance is fairly strong in the case of an isolated, independent amendment, it has much less persuasive force in a case of this kind where the new enactment is a general, comprehensive tax code. State v. Wibaux County Bank, 85 Mont. 532, 281 P. 341, certiorari denied, American Surety Co. v. Mullendore, 281 U. S. 725, 50 S.Ct. 239, 74 L.Ed. 1142. The case of Pacific Telephone & Telegraph Co. v. Henneford, supra, was decided in 1938, and the cases of Southern Pacific Co. v. Gallagher, and Pacific Telephone & Telegraph Co. v. Gallagher, supra, were decided early in 1939. We are unable to say that the enactment of the statute in 1939 indicated a legislative intent and understanding that the Act of 1937 was not sufficiently comprehensive in scope to impose an excise upon imported tangible property where retention and attributes of ownership were exercised over it between the termination of its movement in interstate commerce and the beginning of its use and consumption in a business which is interstate in character. Instead, it is a reasonable presumption that the decisions in the three cases came to the attention of the legislature at its session in 1939 and that to make assurance doubly sure the statute was thereupon amended in such manner as to bring it into parallelism with that in California. Rather than pointing to a legislative intent that the Act of 1937 did not warrant the laying of the tax now in dispute, the enactment of the subsequent act is indicative of a determined intent and purpose from the outset that the tax should be levied.

Since the case was submitted on stipulated facts and admissions contained in the pleadings, there is no need of a new trial. The judgment is reversed and the cause remanded with direction to enter judgment for the commission, with costs.